**Ashley L. Vaughn, OSB 114691**
ashley@dumasandvaughn.com
**Gilion C. Dumas, OSB 922932**
gilion@dumasandvaughn.com
Dumas & Vaughn, LLC
3835 NE Hancock St., Ste. GL-B
Portland, Oregon 97212
Telephone: (503) 616-5007

**Carol M. Merchasin,**
***Pro hace vice forthcoming***
cmerchasin@mcolaw.com
**Zachary McConnell,**
***Pro hace vice forthcoming***
zmcconnell@mcolaw.com
McCallister Olivarius
641 Lexington Ave., 13th Fl.
New York, NY
Telephone: (212) 433-3456

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **G.M.,** an individual, filing under fictitious name,<br><br>          Plaintiff,<br><br>   v.<br><br>**J. MICHAEL SHOEMAKER**, an individual; **THE MOVEMENT CENTER, INC.,** a Massachusetts non-profit corporation authorized to do business in Oregon,<br><br>          Defendants. | Case No. 3:23-cv-00891<br><br>**COMPLAINT**<br>(Sexual Battery; Sexual Battery-Vicarious Liability; Negligence; ORS §§ 30.867, 163.266 (Sex Trafficking; Human Trafficking); 18 U.S.C. §§ 1591, 1595 (Sex Trafficking))<br><br>**JURY TRIAL DEMANDED** |

**McAllister Olivarius**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**Dumas & Vaughn, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

Through her attorneys, Plaintiff G.M. ("Plaintiff")[1] alleges as follows against Defendants J. Michael Shoemaker ("Shoemaker") and the Movement Center, Inc. ("the Movement Center" or "Movement Center" or "the Center" or "the Ashram").

## **PRELIMINARY STATEMENT**

1.      Defendant J. Michael Shoemaker groomed, repeatedly sexually exploited, trafficked, and sexually assaulted Plaintiff.

2.      Plaintiff suffered injuries while she was a student and devotee of Shoemaker, an ordained Swami,[2] at the Movement Center.  Shoemaker is and was, at all material times, the founder, spiritual director, and "guru"[3] of the Movement Center.

3.      Defendants created an environment where vulnerable individuals – especially vulnerable young women like Plaintiff – were physically, spiritually, and sexually exploited.

4.      Shoemaker groomed, physically harmed, coercively controlled, and sexually assaulted Plaintiff and other students under his spiritual tutelage at the Movement Center. Shoemaker, and other leaders within the Movement Center, promulgated the idea that Shoemaker was an enlightened figure, and therefore, all his followers should unquestioningly

---

[1] Given the sensitive and incredibly personal nature of the allegations, Plaintiff G.M. is proceeding via the use of a pseudonym to minimize the risk of personal embarrassment, harassment, stigma, and retaliation.  Plaintiff's counsel will supply her true name to Defendants' counsel as soon as is reasonably possible, following the filing of this Complaint.

[2] A "Swami" is "a Hindu ascetic or religious teacher."  "Swami." Merriam-Webster.com Dictionary, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/swami (last accessed 20 Jun. 2023).

[3] A "guru" is "a personal religious teacher and spiritual guide in Hinduism."  "Guru." Merriam-Webster.com Dictionary, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/guru (last accessed 20 Jun. 2023).

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

obey his orders and express unconditional faith in his decision-making and advice, even about deeply personal matters.

5.      Defendants led devotees, including Plaintiff, to believe that if they cut ties from their guru, they would be incarcerated, driven to suicide, cursed, and/or thrown into hell.

6.      Plaintiff was aware that terrible things happened to students who left the Ashram and became "out of connection" with their guru, Shoemaker.  In fact, between 2009 and 2017, police reports show that one man was found dead from a suspected drug overdose after returning to the Center from drug rehabilitation, and a woman who left the Center was found dead from asphyxiation.  Plaintiff learned about these events while she stayed at the Ashram in Portland.

7.      Shoemaker manipulated the guru-student relationship by fraudulently advising Plaintiff that sexual intercourse was a way of facilitating energy exchange that was necessary for her spiritual enlightenment.  He coerced Plaintiff into believing that such sex acts were purely spiritual exercises.

8.      Shoemaker sexually assaulted Plaintiff by non-consensually touching, fondling, and digitally penetrating her, including non-consensually choking her until she lost consciousness.

9.      The Movement Center, led and directed by Shoemaker, knowingly benefited materially and financially from Shoemaker's acts of sexual exploitation of Plaintiff while she was staying at their property.

## **JURISDICTION**

10.      This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

## PARTIES

11.     Plaintiff is an adult woman who, at all material times, resided in Oregon.  She currently resides in Indiana.

12.     Defendant Shoemaker, also known by his alias "Swami Chetanananda," is a self-described spiritual leader and guru within the Bhagavan Nityananda lineage of Hinduism, and founder and President of the Movement Center.  He is an adult male residing in Oregon.  On information and belief, Shoemaker resided in Multnomah County, Oregon, from in or around 1993 to 2019, and in Gold Beach, Curry County, Oregon, from 2019 to the present.  He sexually assaulted Plaintiff, as well as committed other alleged acts or omissions while attending and leading spiritual classes and other spiritual activities on behalf of the Movement Center in Gold Beach, Oregon.  Shoemaker also engaged in agency activities on behalf of the Movement Center in Multnomah County, Gold Beach, and California.  During his practice as a spiritual leader, Shoemaker has travelled and taught in Nepal, Australia, India, and other countries.

13.     Defendant the Movement Center, known as the Nityananda Institute prior to 2008, is a Massachusetts nonprofit corporation that, until in or around sometime in 2019, had its principal place of business and headquarters in Multnomah County, Oregon, and then, after or around 2019, in Gold Beach, Curry County, Oregon.  On information and belief, its directors and officers presently include, or, at all material times, included President Defendant J. Michael Shoemaker, as well as Registered Agent and Secretary Sharon Ward (residing in Gold Beach).

14.     At all material times, Defendant Shoemaker was acting in his capacity as an agent or employee of the Movement Center within the course and scope of his agency duties for the Movement Center.  Defendant Shoemaker committed his tortious acts in direct connection with his agency duties for Defendant Movement Center; within the time and space limits of his

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

agency duties for the Movement Center; out of a desire, at least partially and initially, to fulfill his employment duties for the Movement Center; and his duties were generally of a kind and nature that he was required to fulfill for the Movement Center.  Shoemaker's grooming and abuse of Plaintiff directly arose from the relationship he cultivated with her through his roles for the Movement Center.  Additionally, or alternatively, Defendant Shoemaker had an express or implied contract or agreement to engage in the joint enterprise of establishing, managing, operating, and promoting programs at the Movement Center for the benefit of Defendants.  On information and belief, Defendant Shoemaker also had a pecuniary interest in programs at the Movement Center.  Defendants invited members of the public, including Plaintiff, to participate in activities, programs, and spiritual activities offered at the Movement Center.

## FACTUAL ALLEGATIONS

### THE MOVEMENT CENTER – CREATION AND HISTORY OF ABUSE

15.     In 1971, Shoemaker moved to Bloomington, Indiana, and formed the Nityananda Institute, which would later become the Movement Center.

16.     Upon information and belief, Shoemaker raped a student at the Nityananda Institute in or around 1973.

17.     In 1978, there were allegations that the Nityananda Institute was engaging in "cult-like behavior."  Upon information and belief, in or around 1982, Shoemaker moved the Nityananda Institute to Cambridge, Massachusetts, before eventually settling in Portland, Oregon, in 1993.  In Portland, Shoemaker purchased a 3-acre, 62,000 square foot estate, which housed several devotees.  Defendants were located in Portland until 2019.  On information and belief, all followers moved out of the Portland location in or around February 2020.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

18.     In 2000, 11 former members of the Nityananda Institute wrote an open letter exposing the horrors, fraud, and coercion that occurred at the Movement Center.

19.     In 2001, The Oregonian released a 5-part series covering the Nityananda Institute and Shoemaker.  The series contained allegations from dozens of former disciples claiming that Shoemaker exploited them financially, spiritually, and sexually.

20.     In or around 2008, Shoemaker forced at least one survivor to ingest narcotics, specifically cocaine, before engaging in what he termed "rituals."  The rituals involved raping women individually or coercing the women into group sex with members of the Movement Center's leadership ring or "inner circle."  On information and belief, such "rituals" may have begun as early as the 1990s.

21.     In 2009, a member of the Movement Center was found dead at the Center's Portland property, following a drug overdose.  In 2017, another member of the Movement Center was found dead in the Multnomah Channel after being missing from the Movement Center for 12 days.

22.     In 2019, a follower of Shoemaker posted publicly on Facebook that she had been sexually assaulted and subjected to drug-fueled gang rapes and other sexual atrocities.  Shortly thereafter, also in 2019, Shoemaker sold the 62,000 square-foot Center and moved the community to Gold Beach.  The Facebook page has since been deleted.

23.     Currently, the Movement Center operates out of a large estate in Gold Beach, Oregon.  Shoemaker leads private spiritual classes and retreats out of the Gold Beach location.  On information and belief, Shoemaker previously ran spiritual classes and retreats in locations in and around Los Angeles, California.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

24.     On information and belief, Shoemaker induced his followers to perform labor, teach classes, and maintain the properties in which the Movement Center operated. The Movement Center's income stream, labor pool, and institutional status all depended on Shoemaker's leadership of the organization, and the Movement Center had a vested interest in keeping Shoemaker satisfied, and ensuring his needs were met.

25.     Since its formal establishment in 1979, the Movement Center participated in a venture with Shoemaker.  Shoemaker ran the Movement Center, an undertaking involving risk and potential profit.  The Movement Center solicited students, recruited devotees to perform labor, spiritual education, and maintenance, and profited from the spiritual, meditation, and yoga education offered in the Ashram.

## PLAINTIFF IS RECRUITED TO THE MOVEMENT CENTER

26.     Plaintiff first encountered the Movement Center's website in October 2016 after doing a Google search for "independent meditation retreat" in Portland.  Plaintiff had planned a week-long trip to the Pacific Northwest, which already included visits to Seattle and Portland. She was enticed by the Movement Center's appealing website and decided to travel to Portland from her home in Dallas-Fort Worth, Texas, to participate in a two-day retreat.  While at the Movement Center, she attended yoga classes and meditation sessions.  She came away from the experience appreciating the communal and supportive environment at the Center.

27.     In early 2019, Plaintiff returned to the Center from Seattle, where she was living at the time.  She had applied to a work-study program advertised on the Center's website.  Her intention was to stay at the Center during the month of January.  She hoped to begin a master's degree in the fall of 2019 and had begun her application.  When Plaintiff was accepted into the

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

Center's work-study program, her understanding was that she would work various jobs in exchange for her room and board.

28.     Prior to arriving at the Center, Plaintiff was informed that the program was no longer officially running, but she was still invited to come to the Center to study, meditate, and work in exchange for room and board.  As described below, Plaintiff would later be coerced into staying at the Center past January 2019.

29.     After she arrived at the Center, Plaintiff was assigned several types of jobs, ranging from secretarial work, to serving as kitchen staff, and even reviewing business files.  She was also mandated to work a fixed number of hours at the Center's front desk.  Plaintiff worked over 40 hours a week for no pay, despite at least one member of the Center telling her she should be paid for the number of hours that she had been working.

30.     Followers of the Center frequently praised Plaintiff as a tremendous asset to the organization.

31.     At the time, Shoemaker and other leaders were planning to move the Center out of Portland.  They had not yet selected a new location for the Center but were researching potential properties.  The decision to move was explained to Plaintiff as a logistically motivated change.  Shoemaker had meditated and determined that the Portland property was too small. Plaintiff remained unaware of the Facebook post and other sexual misconduct allegations against Shoemaker until months after she moved into the Portland property.

## PLAINTIFF DISCOVERS THE MOVEMENT CENTER'S PROLONGED AND TROUBLING RELATIONSHIP WITH SEXUAL ASSAULT

32.     In or around the beginning of her stay at the Center in early 2019, Plaintiff discovered that Shoemaker might be sexually involved with students.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

33.    She inquired about this with several of Shoemaker's followers, and each explained it away.  One woman told Plaintiff that, when it came to Shoemaker, it was not really sex, it was a spiritual practice and teaching.

34.    When Plaintiff became aware of sexual misconduct allegations months after moving in, other members of the Center told Plaintiff that the women alleging sexual assault were lying.  One female member claimed that the women were Shoemaker's spurned ex-lovers.

35.    Over time, the Center's members and employees convinced her that what looked like sexual relationships with students were not "normal" sexual relationships.  Shoemaker taught her that he was enlightened and did not need a physical body.  He existed in physical form solely for the benefit of his students so that he could pass spiritual benefit onto them.  Plaintiff believed that, and several other followers reinforced the message to her.

36.    Plaintiff further believed Shoemaker was an enlightened person who could not harm anyone.  If it looked like harm, followers told Plaintiff that Shoemaker was helping people "work through their tensions."  They told Plaintiff several stories and gave her material to read where "gurus" would abuse or physically hurt students, but spiritually advanced and diligent students simply tolerated such harm as their sacred duty.

## PLAINTIFF IS RECRUITED AND ENTICED INTO MEETING DEFENDANT SHOEMAKER

37.    After a few weeks in the "work-study" program, Plaintiff had not yet met Defendant Shoemaker.

38.    One evening in mid to late January 2019, Jen Wilhem, a follower and chiropractor at the Ashram, asked Plaintiff if she would like to meet Shoemaker.  At the time, Plaintiff sought

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

a spiritual teacher and believed this would be a good opportunity to meet a guru, an enlightened

person. She agreed to the meeting.

39.     Plaintiff later learned that Wilhem was one of Shoemaker's sexual partners and

frequently recruited women for Shoemaker's sexual practice.

40.     Wilhem brought Plaintiff to Shoemaker's apartment on the Center grounds.

Plaintiff and Shoemaker sat down together and had a conversation.

41.     Shortly after this initial meeting, Shoemaker invited Plaintiff to his apartment

alone. He advised her that if they ever were to engage in sexual acts together, it would be a

spiritual experience, with the sole purpose of exchanging energies and allowing tension to be

released. This unsolicited comment upset Plaintiff, and she left Shoemaker's room feeling

frightened.

42.     Upon leaving the apartment, Plaintiff attended a meditation session and a group

meal. She then went to another follower to tell her about Shoemaker's comments and started

crying. The follower reassured Plaintiff and told her that sex was part of the Center's teachings.

43.     Plaintiff also discovered that another female follower was sexually involved with

Shoemaker. However, Plaintiff was told that he was "working with her" and the sexual acts

were part of deeper spiritual teachings.

44.     The more meditation classes Plaintiff attended, and the more she spoke with other

followers, the more she was compelled to view Shoemaker as an enlightened being who could

not harm anyone because of his exalted spiritual position. All of Shoemaker's actions were done

with the purpose of helping his followers "work through their tension" to achieve spiritual

ascendence. The "ego," which Shoemaker defined as the drive to protect oneself and others,

restrained spiritual ascendence by blocking the flow of energy and creating tension. By releasing

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

the tension, Plaintiff was told she could not only achieve enlightenment for herself, but she would clear all bad karma for her entire family line and erase all past wrongs.

## PLAINTIFF IS COERCED BY DEFENDANTS' TEACHINGS

45.     In or around February 2019, Plaintiff was increasingly isolated from her former life and had little contact with friends or family outside of the Movement Center.  Shoemaker told Plaintiff that the people she loves most are usually the biggest obstacles to inner growth.

46.     In this period, Shoemaker read Plaintiff's astrological chart.  He advised her that if she left the Center to pursue the master's degree she had intended to enroll in, she would "be lunch," "something bad [would] happen" to her, and she would not be employable.

47.     Shoemaker further enticed Plaintiff by telling her she could live at the Center without paying rent after Plaintiff expressed concerns over finding a job.

48.     Shoemaker and members at the Center instructed her that maintaining supportive relationships, being meaningfully employed, attending therapy, donating to charities, and even learning new hobbies outside of Defendants' spiritual practices were not helpful to a person's wellbeing.  The only beneficial activities involved the volunteer work at the Ashram, meditation, yoga, and spending time within the Center's community under the absolute tutelage of Shoemaker as Swami Chetanananda.

49.     Shoemaker and his inner circle manipulated Plaintiff into believing that he had psychic abilities.  Plaintiff shared stories or parts of her life in confidence with other followers. Shoemaker later mentioned the specific details in personal or group conversations and in classes as if he had sensed them himself.  When Plaintiff confronted anyone with whom she first shared the information, they denied ever telling Shoemaker any of the stories.  After several of these

**MᶜALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

occurrences, Plaintiff believed that, as part of his spiritual powers, Shoemaker could read minds and perceive a person's innermost feelings.

50.     Shoemaker and his followers also taught Plaintiff that everyone outside of the Center, and especially those not practicing the Ashram's teachings, were untrustworthy because they could not understand the true nature of reality.

51.     Followers told Plaintiff that the world was getting worse and worse and that people who did not have a spiritual practice would be "ground up by the pressure."

52.     Based on this practiced campaign of brainwashing, Plaintiff came to believe that her life would be in peril, spiritually, morally, and literally, if she left Shoemaker or disobeyed him.

53.     Over time, Plaintiff felt coerced into not making any decisions without consulting Shoemaker first, including with whom to have relationships, what career to pursue, and what purchases to make.  Followers explained to her that everyone went to him for advice as a paternal figure.  Based on her trust that Shoemaker always had her best spiritual interest in mind, she even repeatedly consulted him about her relationship with her boyfriend at the time, another follower residing at the Center.

54.     As she became closer with Shoemaker and his inner circle, Defendants encouraged Plaintiff to believe that the more she surrendered to him as her guru, the more spiritual progress she would achieve.  Encouragement of this belief was a cornerstone of the practice at the Center, which was referred to as "guru yoga," a practice that explicitly links surrender to one's guru to spiritual progress and ultimately enlightenment.

55.     Over time, Plaintiff's involvement in the Movement Center led her to believe that she was blessed to have access to a person as enlightened as Shoemaker, and she trusted that he

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

would guide her towards enlightenment.  At all times material to this Complaint, Plaintiff was

not interested in Shoemaker sexually.  She had a boyfriend at the time and saw Shoemaker as a

spiritual teacher only.

## SHOEMAKER GROOMS AND ASSAULTS PLAINTIFF

56.    In Portland, Plaintiff often accompanied Shoemaker to the gym.  When they were

alone, Shoemaker often made comments about sex.  This behavior continued and amplified after

the move to Gold Beach.

57.    Defendants Movement Center and Shoemaker fully completed their relocation to

Gold Beach in or around the summer of 2020.

58.    On one occasion, Shoemaker explained to Plaintiff that sex should be shared

freely, and that she should not feel guilty for being intimate with others besides her partner.

59.    At first, Plaintiff did not feel that Shoemaker's remarks were true.  However, she

had been taught that if Shoemaker provided instruction that she disagreed with, this conflict

constituted "tension" that Plaintiff needed to release for her own spiritual growth.

60.    One day, in or around February 2021 when her then-boyfriend was out of town,

Plaintiff and Shoemaker went to the gym to train together.  While they were alone, Shoemaker

insisted that Plaintiff kiss him.

61.    Plaintiff first gave Shoemaker a light kiss, but he demanded that he "kiss [her]

deeply."  Plaintiff complied.  She understood these commands to be testing her loyalty to the

guru, which was necessary for her spiritual journey.  Failure to obey was not an option.

62.    On the same occasion, throughout the entire session at the gym, Shoemaker went

back and forth between exercising and assaulting Plaintiff by fondling her breasts.  Although

**McAllister Olivarius**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**Dumas & Vaughn, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

Plaintiff was disgusted, she also felt that he was only being sexual to take her to a higher level of spiritual practice, and that she had been blessed by the grace of the guru.

63.     Shoemaker told Plaintiff to come to his room for a "treatment" the next day.

64.     Plaintiff had received "osteopathic treatments" from Shoemaker and others before at the Center as a common spiritual practice.  The procedure entailed lying down on a massage table while the other person placed their hands on the patient's tailbone, under their heart, and under the nape of the neck.

65.     When Plaintiff arrived in Shoemaker's room and began the treatment, Shoemaker suddenly assaulted her by touching her inappropriately and kissing her.  Shoemaker fondled Plaintiff's breasts underneath her shirt.  He slid his hands down her pants and penetrated Plaintiff's vagina with his fingers.  Shoemaker also put his mouth on Plaintiff's nipples.

66.     Plaintiff was frozen.  She had a boyfriend and did not want to have sex, but she froze.  She did not fight back because she trusted her guru, and he told her that his actions were another spiritual exercise.

67.     Shoemaker ordered Plaintiff to come back again for further treatments whenever she had a free moment.

68.     Plaintiff developed severe anxiety after this encounter.  She had trouble sleeping.  However, she felt extreme guilt if she did not go back to Shoemaker.

69.     Plaintiff wanted to justify Shoemaker's sexual assault and reconcile it with everything she had been taught at the Center over the last two years.  To understand how the sexual acts were aiding her spiritual growth, Plaintiff listened to over thirty of Shoemaker's teaching videos uploaded to YouTube.  These videos assured Plaintiff that Shoemaker's teachings and practices were legitimate and that Shoemaker could not have possibly sexually

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

abused her.  Plaintiff was led to believe and feel honored that the sexual acts were in service of a

higher purpose.

## PLAINTIFF ATTAINS PRIVILEGED POSITION IN RETURN FOR FORCIBLE, COERCIVE, AND FRAUDULENT SEX ACTS

70.     Plaintiff observed that women who were sexually involved with Shoemaker were

given special treatment, such as invitations to sit at special places during meals and being asked

to sit next to Shoemaker during communal dinners.  These invitations meant that the invitee had

advanced spiritually beyond the other members.  Plaintiff wanted to be a part of this spiritual

elect.

71.     After the sexual encounters with Shoemaker, Plaintiff was asked to sit in a prime

position next to Shoemaker at dinner.

72.     Moreover, after the sexual assaults occurred, Plaintiff was given unrestricted

access to Shoemaker for one-on-one time, which was considered a blessing among his followers.

73.     Shoemaker also offered Plaintiff the role of editor for his next book and promised

that she would be paid for her work.  Plaintiff felt especially honored because of her particular

background in writing and editing.

74.     In or around February or March 2021, Shoemaker commanded Plaintiff to come

back to his room for another round of treatments.  When Plaintiff entered Shoemaker's room, he

was sitting on the massage table.  He gestured for her to sit with him, and he began to sexually

assault Plaintiff by kissing her and digitally penetrating her vagina without her consent.

75.     Suddenly, Shoemaker put his hands around her throat.  He forcibly choked her

with enough pressure for Plaintiff to lose consciousness.  She did not consent to this assault.

**McALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

76.     When she regained consciousness, Plaintiff asked Shoemaker what had just happened.  Shoemaker told her that it was a "next level orgasm."  Plaintiff noticed that Shoemaker had grabbed her hand and put it on his penis.

77.     Shoemaker then laid Plaintiff back down on the table and non-consensually kissed her and fondled her breasts some more.

78.     Shoemaker then walked to his bedside table, pulled out approximately $250, and gave the money to Plaintiff.

79.     Plaintiff wanted to speak to others about these troubling encounters, but she had been instructed by other students that speaking about her relationship with the guru would impede her spiritual growth and make her lose spiritual energy that she had worked to gain over her time at the Ashram.  The other students could then compare their spiritual progress with hers which could create bad karma, for which Plaintiff would be responsible.  Accordingly, Plaintiff did not tell anyone.

80.     On several occasions following these sexual assaults, Shoemaker requested that Plaintiff send him nude photographs of herself.  Plaintiff did not comply and became confused, since she believed that the sexual assaults were purely spiritual teachings.

81.     Shortly after this assault, Shoemaker began inviting Plaintiff to see him in his room after lunch.

82.     On one such occasion, Plaintiff and Shoemaker discussed her astrology chart.

83.     Suddenly, Shoemaker pushed Plaintiff onto his bed.  He once again explained that sexual intercourse was essential to spiritual practice.  While she remained frozen, Shoemaker ignored her lack of reciprocation and forcibly placed her hand on his crotch, groped her, and penetrated her vagina digitally with his fingers.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

84.     Shoemaker similarly assaulted Plaintiff on one further occasion following an invitation to his room after lunch.

85.     Sexually, physically, and emotionally battered by Shoemaker, Plaintiff finally summoned the courage to set aside her worries about spiritual and physical retribution and left the Ashram in March 2021.

## PLAINTIFF'S DAMAGES

86.     As a direct and proximate result of Defendants' tortious conduct, Shoemaker sexually, physically, and emotionally abused Plaintiff, and Plaintiff suffered, continues to suffer, and will suffer in the future, psychological injuries, including but not limited to, low self-esteem, loss of faith, anxiety, panic attacks, post-traumatic stress disorder, stress, insomnia, nightmares, depression, distrust of authority, shame, disassociation, intimacy issues, fear, anxiety, trust issues, challenges in building and sustaining friendships, and physical injuries associated with at least some of these psychological injuries.  All these injuries caused and will cause Plaintiff noneconomic damages.  Plaintiff also suffered and continues to suffer economic damages in the form of loss of past and future income and costs of medical and mental health treatment.

87.     Defendants acted with an outrageous indifference to a highly unreasonable risk of harm and with a conscious indifference to the health, safety, and welfare of others, including Plaintiff.  Therefore, Plaintiff is entitled to punitive damages against Defendants.

/ / /

/ / /

/ / /

/ / /

/ / /

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

## FIRST CLAIM FOR RELIEF:

### SEXUAL BATTERY
### (*Oregon state law claim*)

### Count I:
### (Direct against Defendant Shoemaker)

88.     Plaintiff realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

89.     Defendant Shoemaker intended to cause harmful or offensive physical contact with Plaintiff and did in fact cause harmful or offensive physical contact with Plaintiff, as described above.

90.     Plaintiff did not consent to Defendant Shoemaker's physical contact.

91.     As a direct and proximate result of his sexual assaults, Plaintiff suffered the injuries and incurred the damages described in all preceding paragraphs.

### Count II:
### (Vicarious against Defendant Movement Center)

92.     Plaintiff realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

93.     At all material times, Defendant Shoemaker was the founder, President, spiritual director, Chief Executive Officer, "guru," and employee and/or agent of the Movement Center.

94.     Defendant Shoemaker's employment and role at the Movement Center was to provide and lead the spiritual teachings of the Ashram.

95.     Defendant Shoemaker sexually assaulted Plaintiff under the guise of spiritual teaching, and he commanded total obedience as part of the guru-student relationship.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

96.     As a direct and proximate result of Defendant's tortious actions, Plaintiff suffered the injuries and incurred the damages described in all preceding paragraphs.

## SECOND CLAIM FOR RELIEF:

### NEGLIGENCE
### (*Oregon state law claim*)

### Count I:
### (Negligence:  Direct against Defendant Movement Center)

97.     Plaintiff realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

98.     Defendant Movement Center owed a heightened duty to Plaintiff as possessors of a business premises.

99.     Based on the Movement Center's prior knowledge alleged above, the Movement Center created a foreseeable risk of harm to Plaintiff in one or more of the following ways:

a)  failing to report Shoemaker to law enforcement despite his decades-long history of sexual assaults;

b)  failing to act after repeated public exposures of Shoemaker's decades of sexual exploitation of female followers and coercive, abusive, fraudulent, forceful, and nonconsensual sex acts with female devotees;

c)  failing to disassociate with and prevent Shoemaker from attending the Movement Center's events and centers, and interacting with the Movement Center's followers;

d)  failing to supervise Shoemaker's interactions with followers to ensure his interactions were safe and appropriate;

**McALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

e)  failing to warn and educate its followers about Shoemaker's history of sexual assaults, and the risk of sexual assault by spiritual leaders in its community;

f)  failing to properly educate its followers regarding what types of activities and lessons were and were not sanctioned by Shoemaker, including but not limited to lessons involving non-consensual and invasive sexual contact and sexual assault;

g)  failing to train their leaders and employees in how to recognize, report, and prevent sexual assaults or sexually inappropriate behavior in the community;

h)  failing to provide a safe and confidential reporting system for followers who had experienced sexual assaults or sexually inappropriate behavior in the community;

i)  representing to the community that Shoemaker was to be trusted and obeyed, at all costs, and that he was a safe and trustworthy mentor; and

j)  failing to implement and enforce sexual assault prevention policies.

100.    As a direct and proximate result of the Movement Center's negligence, Plaintiff suffered the injuries and damages described in all preceding paragraphs.

## Count II:
### (Dangerous Premises:  Direct against Defendant Movement Center)

101.    Plaintiff realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

102.    Defendant Movement Center invited members of the public, including Plaintiff, to attend classes, retreats, and various other programs at the Movement Center, and to work at the Movement Center, in exchange for room and board.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

103.    While Plaintiff was on Defendant's premises, Defendant had a duty to take reasonable steps, such as those described above, to protect Plaintiff from reasonably foreseeable harm by Shoemaker, Defendant's founder and employee.

104.    It was foreseeable, as described agove, that Shoemaker would sexually assault his followers, including Plaintiff.

105.    As business invitees, Plaintiff was the member of a class of individuals to be protected by Defendant while on Defendant's premises.  Shoemaker's sexual assault of Plaintiff occurred on Defendant's premises.

106.    Defendant's failure to undertake reasonable precautionary measures, as described above, was unreasonable in light of the known risk posed by Shoemaker.

107.    Defendant's conduct created a foreseeable risk of harm to Shoemaker's followers, including Plaintiff.

108.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered the injuries and damages described in all preceding paragraphs.

### THIRD CLAIM FOR RELIEF:

**SEX TRAFFICKING**
**(ORS §§ 30.867, 163.266)**

**(Direct against Defendant Shoemaker)**

109.    Plaintiff realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

110.    In violation of ORS § 30.867 and ORS § 163.266, Defendant Shoemaker knowingly recruited, enticed, obtained and/or attempted to recruit, entice, or obtain Plaintiff knowing that force, fraud, or coercion will be used to cause Plaintiff to engage in a commercial sex act.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

111.    Defendant Shoemaker knowingly recruited, enticed, and obtained and/or attempted to recruit, entice, or obtain Plaintiff.  Shoemaker recruited, obtained, or attempted to recruit or obtain Plaintiff by inviting her to his apartment alone and telling her that if they were to engage in sexual acts together, it would be a spiritual experience with the sole purpose of exchanging energies and allowing tension to be released.  Shoemaker enticed or attempted to entice Plaintiff by telling her that surrendering to his sexual advances was the only way that she would progress spiritually and achieve enlightenment.  Shoemaker convinced her that he was an enlightened person and she trusted that he would guide her towards enlightenment, and that therefore he would not harm her.  Shoemaker also enticed Plaintiff or attempted to entice Plaintiff by giving her a privileged position in the Center, such as rewarding her with a prime position seated next to him at communal dinners and one-on-one sessions, prizes he offered only to women who were sexually involved with him.  Shoemaker also offered Plaintiff a paid position as editor of one of his books.

112.    Defendant Shoemaker knowingly used force, fraud, and coercion to cause Plaintiff to engage in commercial sex acts.  Shoemaker intentionally engaged in grooming and coercion to get Plaintiff to bend to his will.  He praised her for her contributions to the Center, forcibly distanced her from anyone outside the Center, and convinced her that the only beneficial activities involved being at the Center under his leadership.  Shoemaker convinced Plaintiff that he was an enlightened person, unable to do harm and that her life would be in peril if she left Shoemaker or disobeyed him.  Shoemaker also made Plaintiff believe he was psychic, able to read her innermost thoughts.  Finally, Shoemaker led Plaintiff to believe that she could not make any decision without asking him first.  After he gained Plaintiff's absolute trust and adulation and rendered Plaintiff immune from outside influence, Shoemaker spent approximately two

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

years grooming and coercing Plaintiff to engage in sexual acts with him to both achieve

enlightenment for herself and clear the bad karma for her entire family line and erase all past

wrongs.  Shoemaker knowingly exploited Plaintiff's devotion and spiritual dependence on him to

fraudulently cause her to engage in sex acts, which include sexual touching and digital

penetration of her vagina and breasts.  Shoemaker used force by putting his hands around

Plaintiff's throat and choking her with enough pressure for her to lose consciousness.

113.     Shoemaker caused Plaintiff to engage in commercial sex acts.  In exchange for

these fraudulent, forceful, and coercive sexual acts, Shoemaker promised that Plaintiff would be

rewarded spiritually, both by helping her to release tensions to achieve enlightenment and by

helping to clear the bad karma for her entire family and clear past wrongs.  This enlightenment

had value.  Shoemaker promised that the sex acts would enhance Plaintiff's status within the

organization, and in fact did so by enabling Plaintiff to get better treatment such as one-one-one

sessions, special seating at dinner, and an offer from Shoemaker to be part of his next publication

as editor.  This special status also had a value.  Finally, Defendant Shoemaker paid Plaintiff a fee

of around $250 in exchange for a sexual act.

114.     Defendant Shoemaker violated ORS § 30.867 and ORS § 163.266 while acting

both in his personal capacity and in his capacity as President, agent, and/or employee of the

Movement Center.

115.     Defendant Shoemaker's violation of ORS § 30.867 is actionable under the statute.

116.     As a direct and proximate result of Defendant Shoemaker's violations of ORS §

30.867 and ORS § 163.266, Plaintiff suffered the injuries and incurred the damages described in

all preceding paragraphs.  Should Plaintiff prevail on this claim, Plaintiff is entitled to reasonable

attorneys' fees.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

## FOURTH CLAIM FOR RELIEF:

### HUMAN TRAFFICKING
### (ORS §§ 30.867, 163.266)

**(Direct and vicarious against Defendant Movement Center)**

117.    Plaintiff realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

118.    In violation of ORS § 30.867 and ORS § 163.266, Defendant Movement Center, through the acts of its agents and/or employees including but not limited to Defendant Shoemaker, knowingly recruited, enticed, harbored, or obtained and/or attempted to recruit, entice, harbor or obtain Plaintiff knowing that force, fraud, or coercion will be used to cause Plaintiff to engage in commercial sex acts.  The Movement Center recruited and obtained Plaintiff through advertising work-study programs on the website and personally soliciting her attendance.  Jen Wilhem, an agent of the Movement Center, recruited and obtained Plaintiff, suggesting she meet Shoemaker, and physically bring her to him.  Shoemaker repeatedly invited Plaintiff for private meetings. When Plaintiff told agents and/or employees of the Movement Center about Shoemaker's sexual conduct towards other followers, she was fraudulently reassured that these were spiritual exercises and not sexual acts.  Other agents and/or employees of the Movement Center told Plaintiff that sex was part of spiritual practice.  They knew that these enticements and recruitment or attempts at enticements and recruitment would lead Defendant Shoemaker to use force, fraud, and/or coercion to cause Plaintiff to engage in a commercial sex act, as detailed above.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

119.    Defendant Movement Center also violated ORS § 30.867 and ORS § 163.266 by knowingly benefitting by receiving something of value from participating in a venture in which Plaintiff was sex trafficked.

120.    By facilitating, encouraging, and enticing Plaintiff to engage in sex acts with Defendant Shoemaker, the Movement Center was able to keep Shoemaker employed there.  The Movement Center received something of value because by keeping their guru Shoemaker happy, sated, and productive, they knew they would be able to attract more people to the Center—which, on information and belief, attracted more revenue and reaped financial benefits.  By ensuring that Shoemaker was sexually satisfied, the Center knew it would be able to continue to benefit from his presence.

121.    The Movement Center also knew or recklessly disregarded that Defendant Shoemaker was trafficking Plaintiff, thereby participating in a venture that involves the prohibited act of trafficking.

122.    The Movement Center is also vicariously liable for the conduct of Defendant Shoemaker.  At all relevant times, there existed an agency relationship between Defendant Movement Center and Defendant Shoemaker.  At all relevant times, Defendant Shoemaker was acting in his capacity as employee of Defendant Movement Center and was acting within the course and scope of employment.  As alleged above, at all relevant times, Defendant Movement Center knowingly benefitted by Defendant Shoemaker's trafficking Plaintiff.  As alleged above, at all relevant times, Defendant Movement Center participated in a prohibited venture.

123.    Defendant Movement Center's violation of ORS § 30.867 is actionable under the statute.

**McAllister Olivarius**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**Dumas & Vaughn, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

124.    As a direct and proximate result of Defendant Movement Center's violations of ORS § 30.867 and ORS § 163.266, Plaintiff suffered the injuries and incurred the damages described in all preceding paragraphs.  Should Plaintiff prevail on this claim, Plaintiff is entitled to reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF:

### SEX TRAFFICKING
### (18 U.S.C. §§ 1591, 1595)

**(Direct against Defendant Shoemaker; Direct, vicarious, and beneficiary against Defendant Movement Center)**

125.    Plaintiff realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

126.    Defendants knowingly, in or affecting interstate or foreign commerce, recruited, enticed, harbored, obtained, and maintained Plaintiff knowing that means of force, threats of force, fraud, or coercion (or a combination thereof) would be used to cause Plaintiff to engage in a commercial sex act.

127.    Defendants' actions knowingly affected interstate or foreign commerce. Shoemaker and Defendants operated an organization that crossed state lines and recruited students, teachers, volunteers, donors, and devotees across state and national borders.  Plaintiff was herself recruited when she was located in both Texas and in Seattle, through the use of an internet website.  Defendants promoted their center on the internet, drawing interest from several different U.S. states and countries.  Shoemaker travelled to and taught across Ashrams in California, Massachusetts, and Oregon, among others U.S. states, and internationally in Nepal, Australia, India, and other countries.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

128.    Defendants recruited, enticed, harbored, obtained, and maintained Plaintiff.  The Movement Center recruited Plaintiff through advertising work-study programs on the website and personally soliciting her attendance despite discontinuing the program.  Jen Wilhem, an agent of the Movement Center, recruited and obtained Plaintiff, suggesting she meet Shoemaker, and physically bring her to him.  Shoemaker repeatedly invited Plaintiff for private meetings.  Defendants and their followers repeatedly made statements about the immense spiritual benefits conferred by being an ardent devotee of the Movement Center and obeying Shoemaker's every command.  Defendants and their followers also repeatedly advised Plaintiff about the spiritual and material benefits of sexual activity with Shoemaker.

129.    Shoemaker knowingly, coercively, forcefully, and fraudulently induced Plaintiff into sexual activity.  Shoemaker and leaders and devotees within the Movement Center repeatedly led Plaintiff to believe that she would face grave spiritual and physical repercussions by rejecting him, his teachings, and his sexual advances.  Plaintiff believed that her life would be in peril, spiritually, morally, and physically, if she left Shoemaker or disobeyed him.  Shoemaker commanded Plaintiff to kiss him and forcibly fondled Plaintiff's breasts.  Shoemaker kissed, fondled, and digitally penetrated Plaintiff, and put his mouth on her nipples, under the fraudulent guise of "osteopathic treatments."  Shoemaker also forcibly choked Plaintiff and sexually assaulted her by non-consensually placing her hand on his crotch after she lost consciousness.

130.    Both Shoemaker and the Movement Center knew, or should have known, that Plaintiff was being fraudulently, forcefully, and coercively induced into sexual activity.  Shoemaker and the Movement Center had been the subject of sexual assault and sexual exploitation allegations for decades, and publicly at least as early as 2001.  Several individuals, over a span of multiple decades, have come forward with damaging and detailed allegations of

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

coercive, fraudulent, non-consensual, and forcible sex with Shoemaker.  Shoemaker's "inner circle," and prominent Movement Center leaders, were aware that Plaintiff was being enticed and recruited for sexual activity with Shoemaker and actively encouraged Plaintiff to take part in such activity.

131.    Shoemaker's fraudulent, forceful, and coercive sex acts with Plaintiff were commercial in nature. Plaintiff was both promised and received things of value on account of these sexual acts.  Shoemaker and devotees and leaders of the Movement Center repeatedly promised Plaintiff that she would receive spiritual enlightenment if she acceded to Shoemaker's every command.  After engaging in fraudulent, forceful, and coercive sexual activity with Shoemaker, Plaintiff received special treatment within the Movement Center, as well as an invitation to a prime position seated next to Shoemaker at communal meals.  After the assaults began, Shoemaker offered Plaintiff the role of editor of his next book and promised that it would be a paid position.  Shoemaker also attempted to pay Plaintiff around $250 after forcibly sexually assaulting her.

132.    Shoemaker also attempted to receive things of value on account of his sex acts with Plaintiff, by soliciting nude photos from her.

133.    Shoemaker engaged in the violations of 18 U.S.C. § 1591 and 18 U.S.C. § 1595 detailed above while acting as an agent for the Movement Center, as detailed in above.

134.    In addition to being directly liable for the sex trafficking of Plaintiff in violation of 18 U.S.C. § 1591, the Movement Center further knowingly benefited, financially or by receiving something of value, from participation in a venture which they knew or should have known engaged in an act in violation of 18 U.S.C. § 1591.

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

135.    Shoemaker was the founder, President, spiritual director, Chief Executive Officer and "guru" of the Movement Center.  It was Shoemaker's teachings and alleged spiritual prowess that enticed followers to the Movement Center.  Followers were induced by Shoemaker to perform labor, teach classes, and maintain the properties in which the Movement Center operated.  On information and belief, the Movement Center's income stream, labor pool, and institutional status all depended on Shoemaker's leadership of the organization, and Movement Center had a vested interest in keeping Shoemaker satisfied, and ensuring his needs were met.

136.    The Movement Center participated in a venture with Shoemaker.  Shoemaker ran the Movement Center, an undertaking involving risk and potential profit.  The Movement Center solicited students, recruited devotees to perform labor, spiritual education, and maintenance, and profited from the spiritual, meditation, and yoga education offered in the Ashram.

137.    As detailed above, the Movement Center should have known Shoemaker's actions constituted a violation of 18 USC § 1591.

138.    As a direct and proximate result of Defendants' violations of 18 U.S.C. § 1591 and 18 U.S.C. § 1595, Plaintiff suffered the injuries and incurred the damages described in the preceding paragraphs.  Should Plaintiff prevail on this claim, she is entitled to reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.    If successful on any of Plaintiff's claims for relief, noneconomic and economic damages for Plaintiff to be determined by the jury at the time of trial;

2.    For Plaintiff's disbursements and incurred costs;

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007

3.      For Plaintiff's reasonable attorneys' fees; and

4.      For any other relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and LR 38, Plaintiff

demands trial by jury for all of the issues pleaded herein so triable.

DATED: June 20, 2023

Respectfully submitted,

 /s/ Ashley L. Vaughn
Ashley L. Vaughn, OSB No. 114691
Gilion C. Dumas, OSB No. 922932
**DUMAS & VAUGHN, LLC**

/s/ Carol M. Merchasin
Carol M. Merchasin, *pro hac vice forthcoming*
**MCALLISTER OLIVARIUS**

/s/ Zachary McConnell
Zachary McConnell,*pro hace vice forthcoming*
**MCALLISTER OLIVARIUS**

*Of Attorneys for Plaintiff*

**MCALLISTER OLIVARIUS**
641 Lexington Ave., 13th Floor
New York, NY
Telephone: (212) 433-3456

**DUMAS & VAUGHN, LLC**
3835 NE Hancock St., Ste. GL-B
Portland, OR 97212
Telephone: (503) 616-5007